```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ADVANCED DIRECTORY SALES, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 06-810 (JBS) |
| v. | |
| ALLENTOWN MEDICAL SERVICES, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Michael O. Kassak, Esq.
WHITE & WILLIAMS, ESQS.
457 Haddonfield Road
Suite 400
Cherry Hill, NJ 08002-2220
    Attorney for Plaintiff Advanced Directory Sales

Susan R. Fiorentino, Esq.
GALLAGHER, SCHOENFELD, SURKIN, CHUPEIN & DEMIS, PC
25 West Second Street
PO Box 900
Media, PA 19063
    Attorney for Defendants Steven Brigham, Allentown Medical
    Services, American Women's Services, Associates in
    Obstetrics/Gynecology, CK Company, and Professional Medical
    Services, P.C.

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

This case arises out of a dispute over the financial obligations between Plaintiff Advanced Directory Sales ("ADS"), a company that assists businesses in placing advertisements in telephone directories' yellow pages, and Defendants, who employed Plaintiff's services for many years. Plaintiff filed this action

against Defendants, alleging that Defendants failed to pay for advertising services that Plaintiff had provided, and thereby breached the terms of their oral agreement with Plaintiff. Defendants filed a Counterclaim against Plaintiff, alleging that Plaintiff fraudulently misrepresented the terms of its pricing policies and that Plaintiff breached the parties' contract by overcharging Defendants. Plaintiff has moved for summary judgment as to Defendants' counterclaims [Docket Item 26]. For the reasons set forth below, the Court will grant Plaintiff's motion.

**II. BACKGROUND**

    **A. Facts**

Despite the fact that this case is more than two-and-a-half years old and that "[f]act discovery is complete," (Pl.'s Statement of Undisputed Material Facts ("SUMF") ¶ 11), the evidence documenting the parties' relationship is limited. In particular, as the Court explains below, the claims and counterclaims in this case center around contractual arrangements between the parties for which very little documentary evidence exists. The record is nonetheless sufficient for the Court to resolve the limited issues raised by Plaintiff's motion.

Plaintiff is a New Jersey corporation "in the business of assisting businesses place yellow page advertisements in multiple telephone directories on a regional and national basis." (Compl.

¶ 9.) Defendant Dr. Steven Brigham is a medical doctor who, during the time period relevant to this litigation, owned the Corporate Defendants[1] – all of which are entities specializing in the provision of medical services for women – and represented those entities in their dealings with ADS. (Id. at ¶ 7; Ans. at ¶ 7; Defs.' Opp'n Br. Ex. 2.) ADS filed this action against Dr. Brigham and the Corporate Defendants, alleging that Defendants have failed to pay for its advertising services in breach of an agreement between the parties.

Prior to his initial contact with ADS, Dr. Brigham used local sales representatives to place his business' advertisements in the yellow pages of telephone directories. (Brigham Dep. 58-59.) In 1992 or 1993, James DiBease, a sales representative for ADS, contacted Dr. Brigham and informed him that, as a "national representative," he and ADS could place advertisements for Dr. Brigham's businesses in telephone directories throughout the nation at a lower cost than Dr. Brigham had been paying to the local sales representatives. (Id.) Although the parties do not dispute that Dr. Brigham and Mr. DiBease agreed at some time in the early 1990s that Dr. Brigham would employ ADS' services in placing yellow page advertisements, they disagree over the terms of that agreement and the relationship that ensued.

---

[1] The Corporate Defendants are Allentown Medical Services, American Women's Services, Associates in Obstetrics/Gynecology, CK Company, and Professional Medical Services, P.C.

According to Dr. Brigham, he and Mr. DiBease entered into an oral agreement under which Dr. Brigham's businesses would use ADS to place their advertisements in return for certain promises DiBease made regarding the pricing of ADS advertizing. (Brigham Dep. 58-59; Defs.' SUMF ¶ 7.) Specifically, Dr. Brigham testified that DiBease promised Dr. Brigham that ADS could place Defendants' advertisements for half of the prevailing rate charged by the local representatives Defendants had previously used. (Brigham Dep. 58; Am. Countercl. ¶ 20.) Mr. DiBease stated that he could offer these lower prices, according to Dr. Brigham, because, as a national sales representative, DiBease "got discounts that local sales reps didn't get," and because he would reduce ADS' own commission "and pass along fifteen percent to [Defendants]." (Brigham Dep. 58-59.) Defendants claim that this was an oral agreement that was never reduced to writing. (Defs.' SUMF ¶ 7.)

For approximately eight years after entering into this agreement, until 2002, Defendants proceeded to use ADS to place their advertisements in telephone directories. (Brigham Dep. 68.) According to Dr. Brigham, during that period, Defendants never received a single invoice or bill from ADS. (Id. at 62-63.) Instead, Dr. Brigham would schedule meetings with Mr. DiBease to discuss where to place advertisements, Mr. DiBease would orally inform Dr. Brigham of the price for such

advertisements, and Dr. Brigham would pay DiBease on behalf of Defendants.  (Id. at 63-64.)  While Dr. Brigham testified that he repeatedly asked ADS for invoices to assist Defendants in accounting for their advertising expenses, Defendants "never got any invoices" from ADS.  (Id. at 67.)  As Dr. Brigham testified, over the course of Defendants' eight-year business relationship with ADS, he "had no idea how much [they] owed, other than what Mr. DiBease told [him]."[2]  (Id. at 68.)  During this eight-year period, Defendants claim and have submitted evidence indicating that they made payments to ADS in excess of three million dollars in advertising costs.  (Id. at 79; Defs.' Opp'n Br. Ex 5.)

By the "[l]ate nineties," Dr. Brigham began to suspect that ADS was overcharging Defendants for its services.  (Brigham Dep. 77.)  This suspicion was confirmed in 2001, Dr. Brigham claims, when he employed a local sales representative to place an advertisement in Verizon's Virginia Beach telephone directory, which cost half as much as the price DiBease charged for the same advertisement.  (Id. at 72-73.)  Additionally, Dr. Brigham testified that since Defendants terminated their relationship with ADS, his advertising costs have decreased "by as much as 50%."  (Defs.' SUMF ¶¶ 22-23.)  From these facts, Defendants conclude that Plaintiff overcharged them for its services by 50%

---

[2] According to Defendants, the first time Dr. Brigham ever saw the invoices that Plaintiff alleges were never paid was during the discovery phase of this lawsuit.  (Defs.' SUMF ¶ 11.)

5

over the course of the parties' relationship.

Plaintiff's account of the parties' relationship differs from Defendants' on several points.  One of the most significant points of departure between the parties concerns whether Plaintiff provided Defendants with invoices for its services – in his deposition, Mr. DiBease testified that he gave invoices to Dr. Brigham, and mailed invoices to the Corporate Defendants, on a monthly basis.[3]  (DiBease Dep. 88.)

Plaintiff also appears to dispute Dr. Brigham's testimony that Defendants' agreements with Plaintiff were not reduced to writing,[4] noting that in his deposition, Mr. DiBease testified that there were written agreements between ADS and the Corporate Defendants, but that he "cannot find them."[5]  (Id. at 70.)  As to Defendants' allegations regarding DiBease's representations about

---

[3]  Indeed, the premise of Plaintiff's claims against Defendants is that from January 1, 2001 through September 1, 2001, and again on July 1, 2003, Defendants were billed for ADS' services – for a total amount of over one million dollars – of which Defendants failed to pay $882,318.43.  (Compl. ¶¶ 15-16.)

[4]  Both parties acknowledge that in 1995, Dr. Brigham, on behalf of a company called Mohonk Corp., signed an "Agreement for Directory Advertising" with ADS.  (Pl.'s Br. Ex. F.)  Mohonk Corp. is not a party to this action, and, at least for purposes of this motion, neither Plaintiff nor Defendants appears to suggest that the terms of the Mohonk-ADS contract govern the parties' agreement.

[5]  Despite DiBease's testimony that such written contracts once existed, ADS' contractual claims against Defendants are apparently based upon the existence of oral, not written, contracts.  (Compl. ¶¶ 18, 24.)

ADS' pricing, Plaintiff admits that it agreed to reduce its commissions by fifteen percent, but only if Defendants paid their invoices within thirty days of being billed.  (DiBease Dep. 65-67.)  Similarly, Plaintiff concedes that it agreed to pass discounts offered by telephone book publishers on to Defendants, (id. at 78; Pl.'s Br. Ex. G), but only if Defendants paid their invoices on time, which Defendants allegedly failed to do. (Pl.'s SUMF ¶¶ 7-9.)

### B. Procedural History

Plaintiff filed this action in the Superior Court of New Jersey, Camden County, on January 11, 2006, alleging that Dr. Brigham and the Corporate Defendants breached their contract with ADS by failing to pay for ADS' advertising services (Counts I and II), and asserting a claim for recovery based on quasi-contract against all Defendants (Count III).  (Docket Item 1.)  Defendants removed the action to this Court on February 22, 2006, (id.), and filed their Answer and Counterclaim, asserting claims of fraud (Count I) and breach of contract (Count II) against Plaintiff. (Docket Item 5.)  Plaintiff subsequently filed the motion for summary judgment presently under consideration.  (Docket Item 26.)

### III. DISCUSSION

#### A. Standard of Review

Summary judgment is appropriate when the materials of record

"show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255). It there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment may not be granted. Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

    **B.   Breach of Contract Claim**

The Court first addresses Plaintiff's argument that it is entitled to summary judgment as to Defendants' breach of contract

claim. In that claim, Defendants allege that under the terms of their oral contract with ADS, ADS promised Defendants "that they would receive 50% off of the prevailing rate for advertising if they used ADS" to place advertisements in telephone directories. (Am. Countercl. ¶ 20.) According to Defendants, they employed ADS' services, but ADS failed to adhere to its promise to charge Defendants half of the prevailing rate, and thereby breached the terms of its contract with Defendants.

Plaintiff argues that, even if DiBease made such a promise, Defendants have failed to adduce evidence from which a reasonable jury could determine the existence and scope of Defendants' damages. According to Plaintiff, despite Defendants' allegation that they "placed ads through ADS but did not receive 50% off of the prevailing rate," (id. at ¶ 21), Defendants' evidence is insufficient to enable the jury to determine what the "prevailing rate" was, making Defendants' claim for damages impermissibly speculative. In the absence of expert testimony or some other competent evidence to assist the jury in determining the "prevailing rate," Plaintiff argues, Defendants' claim for damages is speculative and unsupportable.

The Court agrees with Plaintiff that Defendants' evidence is insufficient to establish that they suffered damages as a result of ADS' alleged breach of its oral agreement, and will grant Plaintiff's motion for summary judgment as to Defendants' breach

of contract claim. "A party bringing a claim for breach of contract has the burden of proof to establish all elements of its cause of action, including damages." Improvement Authority v. GSP Recycling Co., Inc., 818 A.2d 431, 501 (App. Div. 2003) (citation omitted). Under New Jersey law, while a claimant "should not be denied compensation merely because the exact amount of damages is uncertain," the record "must support a reasonable estimate of damages, based upon more than mere speculation." McConkey v. AON Corp., 354 N.J. Super. 25, 58 (App. Div. 2002); see also Borough of Fort Lee v. Banque National de Paris, 311 N.J. Super. 280, 291 (App. Div. 1998) (same); Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 23 F. Supp. 2d 509, 515 (D.N.J. 1998) (citing New Jersey cases holding that a claim for compensatory damages must be supported by "[e]vidence affording a basis for estimating damages with some reasonable degree of certainty" and that "damages claimed in a breach of contract action must be reasonable, certain and not speculative") (citations omitted).

    As Plaintiff has argued, Defendants have proffered no expert testimony or other evidence from which a jury might assess whether Defendants paid prices at, above, or below the prevailing rate over the course of the parties' eight-year business relationship. In support of its claim for damages amounting to half of the amount that it paid to ADS over that eight-year

10

period – more than 1.8 million dollars, (Pl.'s Opp'n Br. Ex. 6) – Defendants have offered no evidence apart from Dr. Brigham's testimony that after he stopped advertising with ADS in 2002, his advertising costs decreased "by as much as 50%," (Defs.' SUMF ¶¶ 22-23), and that he paid less for placing a single advertisement when he used a local representative at some point in 2001. (Brigham Dep. 72-73.) This evidence is plainly insufficient to "support a reasonable estimate of damages, based upon more than mere speculation." McConkey, 354 N.J. Super. at 58. That Defendants' advertising costs decreased in 2002 after Defendants ceased using ADS' services does not establish "with some reasonable degree of certainty," Lithuanian Commerce Corp., 23 F. Supp. 2d at 515 (citation omitted), that Defendants did not "receive 50% off of the prevailing rate" for advertising services throughout most of the 1990s. (Am. Countercl. ¶ 21.) The evidence is silent as to what the "prevailing rate" was throughout almost the entirety of the parties' business relationship.

Indeed, even if the Court were to infer that Defendants began paying the "prevailing rate" in 2002, and that the 2:1 ratio between ADS' prices and this supposed prevailing rate in 2002 existed throughout the parties' eight-year business relationship – inferences not suggested by a scintilla of evidence in the record – the evidence would not support the

11

damages claim Defendants have advanced, since Defendants have claimed that they were promised prices that were 50% <u>below</u> the prevailing rate. This does not suggest that Defendants have underestimated their damages claim, but, rather, that they have no credible basis for estimating their damages whatsoever. Without "[e]vidence affording a basis for estimating damages with some reasonable degree of certainty," Defendants' claim invites precisely the type of unbounded speculation that is not permitted under New Jersey law. <u>Lithuanian Commerce Corp.</u>, 23 F. Supp. 2d at 515 (citation omitted).

In opposing Plaintiff's motion, Defendants argue that "in a case where more precise information is prevented by the acts and wrongdoing of the party charged," an estimate of damages may be inferred. <u>United States v. American Packing Corp.</u>, 125 F. Supp. 788, 791 (D.N.J. 1954). This is not such a case. In order to provide a reasonable basis for estimating their damages, Defendants were required to demonstrate, first, what they paid ADS, and, second, what the prevailing industry rates were over the course of the parties' relationship. Plaintiff did not prevent Defendants from adducing either category of evidence – Defendants know what they paid to ADS, (Defs.' Opp'n Br. Ex. 5), and nothing Plaintiff did prevented Defendants from obtaining evidence of the prevailing industry rates. This evidence was Defendants' to obtain.

In summary, because there is no evidence in the record from which a jury could determine either the existence or extent of Defendants' damages, the Court will grant Plaintiff's motion for summary judgment as to Defendants' breach of contract claim.

### C.  Fraudulent Misrepresentation Claim[6]

In Count I of the Amended Counterclaim, Defendants allege that Plaintiff's statements comparing its prices to those of local sales representatives and the prevailing industry rate were false, that Plaintiff knew the statements were false, and that Defendants relied on those representations in choosing to place advertisements through ADS.  (Am. Countercl. ¶¶ 13-17.)  As the Court explains below, it will grant Plaintiff's motion for summary judgment as to Defendants' fraudulent misrepresentation claim.

In order to prevail on a fraudulent misrepresentation claim, the party asserting the claim must prove by clear and convincing evidence that "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant

---

[6] While Defendants label the claim alleged in Count I of the Amended Counterclaim as one for "fraud," their arguments make clear that their claim is actually based on a theory of fraudulent misrepresentation.  "Moreover, in its motion for summary judgment, [ADS] treats the claim as one for fraudulent misrepresentation, and [Defendants] do not object to this characterization in their opposition papers."  Viking Yacht Co. v. Composites One LLC, 496 F. Supp. 2d 462, 471 n.16 (D.N.J. 2007).  The Court accordingly treats Count I of the Amended Counterclaim as a claim for fraudulent misrepresentation.

13

of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Konover Constr. Corp. v. E. Coast Constr. Servs. Corp., 420 F. Supp. 2d 366, 370 (D.N.J. 2006); Viking Yacht Co. v. Composites One LLC, 496 F. Supp.2d 462, 471 (D.N.J. 2007). Plaintiff argues that summary judgment is appropriate because Defendants have not established that Plaintiff made "a material misrepresentation of a presently existing or past fact" or that Defendants were damaged as a result of the alleged misrepresentation. Konover Constr. Corp., 420 F. Supp. 2d at 370. Specifically, Plaintiff argues: (1) that even if Plaintiff could prove that DiBease made the statement in question, it was merely a forward-looking projection not properly the subject of a fraud claim, and (2) that Plaintiff's claim for damages is too speculative to be sustained as a matter of law.

The Court does not agree with Plaintiff that Mr. DiBease's statement to Dr. Brigham about ADS' pricing structure amounted to mere puffery or an optimistic prediction about contingent future events. It is true, as Plaintiff argues, that certain statements cannot form the basis of a fraud claim, because they are too vague or speculative to constitute "a material misrepresentation of a presently existing or past fact." Id. Hence, "[s]tatements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the

14

future," as well as "statements that can be categorized as 'puffery' or 'vague and ill-defined opinions'" are not assurances of fact, and are thus not properly the subject of a fraudulent misrepresentation claim.  Alexander v. CIGNA Corp., 991 F. Supp. 427, 435 (D.N.J. 1998).  "Indeed, in order to constitute a fact, a statement's content must be susceptible of exact knowledge at the time it is made."  Id. (internal quotations and citations omitted).

DiBease's alleged description of ADS' pricing structure was not simply an opinion about the quality of Plaintiff's services, see Rodio v. Smith, 123 N.J. 345, 352 (1991) (slogan stating "you're in good hands with Allstate" was mere puffery), nor can it be characterized as an expectation for "future or contingent events," as Plaintiff suggests.  Alexander, 991 F. Supp. at 435.  Mr. DiBease's statement, according to Dr. Brigham's deposition testimony, was instead a factual comparison of ADS' then-existing rates with those of local sales representatives, which certainly was "susceptible of exact knowledge at the time it is made."  Id. (internal quotations and citations omitted); see also VT Investors v. R & D Funding Corp., 733 F. Supp. 823, 836 (D.N.J. 1990) (noting that a seller's guarantee that the buyer would earn at least 100% in profits in a short time was a material statement of fact).  For purposes of this summary judgment motion, therefore, the Court assumes that the misrepresentation at issue

was a false statement comparing ADS' then-existing rates with those of local sales representatives in the market.

For the following reasons, however, the Court will grant Plaintiff's motion for summary judgment as to Defendants' fraudulent misrepresentation claim.  First, as the Court explained, supra, it agrees with Plaintiff that Defendants have failed to adduce evidence from which a reasonable jury could find that Defendants suffered damages as a result of Plaintiff's alleged misrepresentation.  This fact alone is sufficient to grant Plaintiff's motion for summary judgment as to Defendants' fraudulent misrepresentation claim.  See Konover Constr. Corp., 420 F. Supp. 2d at 370.

In addition, the Court further finds that Defendants cannot show that their reliance upon Plaintiff's alleged misrepresentation was reasonable.  Id.  While Defendants are correct that the reasonableness of a party's reliance upon another's misrepresentations is generally a jury question, see Goen Technologies Corp. v. NBTY, Inc., No. 05-4597, 2007 WL 2595753, *4 (D.N.J. Sept. 4, 2007), courts have recognized that

> [a] party in possession of his mental faculties is not justified in relying on representations made, when he has ample opportunity to ascertain the truth of the representations before he acts.  When he is afforded the opportunity of knowing the truth of the representations, he is charged with knowledge.  If one does not avail himself of the means of knowledge open to him, he cannot be heard to say he was deceived by misrepresentations.

Fleming Companies, Inc. v. Thriftway Medford Lakes, Inc., 913 F.

Supp. 837, 844 (D.N.J. 1995) (citation omitted) (granting summary judgment where allegedly defrauded party's reliance was not reasonable); <u>International Minerals and Min. Corp. v. Citicorp North America, Inc.</u>, 736 F. Supp. 587, 598 (D.N.J. 1990) ("[b]ecause the law does not permit recovery for fraud or misrepresentation based upon reliance which is unreasonable, summary judgment must be granted"); <u>see</u> <u>also</u> <u>Viking Yacht Co.</u>, 496 F. Supp.2d at 473 ("Although the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses") (citation omitted).

In this case, Defendants were aware of what they paid for telephone directory advertising placements prior to working with ADS, (Defs.' Opp'n Br. Ex. 5), and, through the prices quoted by Mr. DiBease to Dr. Brigham at their meetings, had every opportunity to know what ADS would charge to place such advertisements. (Brigham Dep. 63-64.) Thus, despite having the data necessary to determine whether ADS' rates were in fact half of what Defendants had previously been paying, Defendants proceeded to utilize ADS' services for eight years. Indeed, Defendants continued to employ ADS' services for years after Dr. Brigham allegedly recognized that they were not paying half of the prevailing market rate. (<u>Id.</u> at 77.) Even assuming, as the

Court must on a motion for summary judgment, that DiBease knowingly misrepresented ADS' pricing policies to Dr. Brigham, Defendants' "reliance on any such representations was not justified or reasonable since they had ample opportunity to ascertain the truth of any such representations," <u>Fleming Companies, Inc.</u>, 913 F. Supp. at 845, both at the outset of the parties' relationship and during the eight ensuing years.  In other words, there is no factual dispute that Defendants knew what they were paying for these same services to place advertising in yellow pages, and they knew what ADS then charged for the same services thereafter, and they readily could determine whether ADS' rate structure saved one-half of their prior costs.  Defendants had ample opportunity and incentive to ascertain whether ADS' representations were false, both before using ADS' services and after receiving the first charges for ADS' services.

The Court will accordingly grant Plaintiff's motion for summary judgment as to Defendants' fraudulent misrepresentation claim.[7]

**IV.  CONCLUSION**

For the reasons explained above, the Court will grant

---

[7] Plaintiff has also moved for summary judgment as to Defendants' claims for attorney's fees and punitive damages. Because the Court finds that Plaintiff is entitled to summary judgment as to Defendants' substantive claims, the parties' arguments relating to these secondary matters are moot.

Plaintiff's motion for summary judgment upon Defendants' counterclaims.  The accompanying Order will be entered.


**June 30, 2008**                                         **s/ Jerome B. Simandle**
Date                                                    JEROME B. SIMANDLE
                                                         United States District Judge